Michael A. Strauss (State Bar No. 246718)
mike@strausslawyers.com
Aris E. Karakalos (State Bar No. 240802)
Aris@strausslawyers.com
Andrew C. Ellison (State Bar No. 283884)
andrew@strausslawyers.com
**STRAUSS & STRAUSS, APC**
121 N. Fir St., Suite F
Ventura, California 93001
Telephone: (805) 641.6600
Facsimile: (805) 641.6607

Attorneys for Plaintiff Marlin McClure and the Putative Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIN MCCLURE, an individual, for himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRAND ENERGY SERVICES, LLC, a Delaware corporation doing business in California; BRAND ENERGY SERVICES OF CALIFORNIA, LLC, a Delaware corporation doing business in California; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:18-cv-01726-KJM-AC<br><br>*Assigned to: the Hon. Kimberly J. Mueller*<br><br>**PUTATIVE CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Complaint filed: June 14, 2018 |

Plaintiff hereby submits the attached supplemental authority bearing on resolution of some of the issues currently pending before this Court, including whether under the U.S. Supreme Court's decision in *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881 (2019), Plaintiff's California meal and rest break claims stemming from work

1

performed on oil platforms located in federal waters on the Outer Continental Shelf ("OCS") remain viable, or whether federal law "addresses" these particular issues.

On January 16, 2020, the U.S. District Court for the Northern District in *Mauia v. Petrochem Insulation, Inc.*, Case No. 18-cv-01815-TSH (Dkt. No. 93), in an opinion that thoroughly dissects the relevant issue, concluded that Plaintiff's California claims for meal and rest breaks arising on the OCS do remain viable because there is no federal law that "addresses" these issues as intended by *Parker Drilling*. The opinion is attached hereto as **Exhibit A** for this Court's review.

DATED: January 17, 2020                              **STRAUSS & STRAUSS, APC**

                                                    By:  */s/ Aris E. Karakalos*
                                                         Aris E. Karakalos
                                                         Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IAFETA MAUIA,

    Plaintiff,

    v.

PETROCHEM INSULATION, INC.,

    Defendant.

Case No. 18-cv-01815-TSH

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 77

## I. INTRODUCTION

This putative class action involves alleged violations of the California Labor Code and Fair Labor Standards Act ("FLSA") by Defendant Petrochem Insulation, Inc. while employing Plaintiff Iafeta Mauia and others on oil platforms on the Outer Continental Shelf ("OCS"). Before the Court is Petrochem's Amended Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 84. Mauia filed an Opposition (ECF No. 86) and Petrochem filed a Reply (ECF No. 87). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Petrochem's motion for the following reasons.

## II. BACKGROUND

Mauia worked for Petrochem as an hourly Onsite Project Manager and Superintendent of scaffolding projects on oil platforms off the coast of California. Third Am. Compl. ("TAC") ¶ 9. He worked for Petrochem until around March 2016. *Id.* ¶¶ 9-10. On February 20, 2018, he filed an action against Petrochem in state court which Petrochem removed to this Court.

In his Third Amended Complaint, Mauia alleges five causes of action against Petrochem related to his work on the platforms: (1) Petrochem failed to provide meal periods as required by

California law and therefore is liable for meal period premiums under California Labor Code section 226.7, TAC ¶ 32; (2) it failed to provide rest periods as required by California law and therefore is liable for rest period premiums under California Labor Code section 226.7, TAC ¶ 39; (3) it willfully failed to pay overtime, double-time, and meal and rest period premium wages under California law, which failure constitutes unfair business practices under the California Business and Professions Code section 17200, TAC ¶ 47; (4) it did not pay immediately all meal or rest period premium wages earned and unpaid upon discharge, and that such failure was willful, TAC ¶ 55; and (5) it willfully and in bad faith did not pay proper overtime rates for overtime work, in violation of section 207 of the FLSA, by not including the reasonable cost of meals and lodging when calculating overtime earnings, TAC ¶¶ 61-62.

Petrochem moves to dismiss all claims.

### III.    LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In considering a motion to dismiss, a court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, a "court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

### A.   *Parker Drilling Mgmt. Servs. v. Newton*

While this case has been pending, the U.S. Supreme Court issued an opinion addressing whether federal law or California law applies to wage and hour claims made by employees who work on drilling platforms on the OCS.  *Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881 (2019).  That case is especially pertinent here, as it clarified the standard for determining when state law applies on the OCS (and overturned the Ninth Circuit's decision on that issue).  The case involved a former employee, Newton, who had worked on drilling platforms off the California coast.  Newton filed a class action which included claims premised on California's minimum-wage and overtime laws.  The issue before the Supreme Court was whether California law could be adopted since the claims arose out of work on the OCS.

The Supreme Court noted first that the Outer Continental Shelf Lands Act ("OCSLA"), 42 U.S.C. §§ 1333-56b, "extends federal law to the subsoil and seabed of the [OCS]."  139 S. Ct. at 1886.  "Under the OCSLA, all law on the OCS is federal law, administered by federal officials."  *Id.*  The OCSLA, the Court wrote, "denies States any interest in or jurisdiction over the OCS, and it deems the adjacent State's laws to be federal law '[t]o the extent that they are applicable and not inconsistent with' other federal law."  *Id.* (quoting 43 U.S.C. § 1333).  The Court proceeded to address the question of how to determine which state laws meet that requirement and therefore should be adopted as federal law.

The Supreme Court noted that the District Court in the earlier proceedings had applied

3

Fifth Circuit precedent which provides that under the OCSLA, "state law only applies to the extent it is necessary to 'fill a significant void or gap' in federal law." *Newton v. Parker Drilling Mgmt. Servs.*, 2015 U.S. Dist. LEXIS 191899, *6 (quoting *Cont'l Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n*, 417 F. 2d 1030, 1036 (1969)). On appeal, the Ninth Circuit vacated and remanded, finding that state law is "'applicable'" under the OCSLA whenever it "pertains to the subject matter at hand," and that state laws are "inconsistent" with federal law under the OCSLA only if "they are mutually incompatible, incongruous, or inharmonious." *Newton v. Parker Drilling Mgmt. Servs.*, 881 F.3d 1078, 1078-93 (2018) (citations omitted). The Supreme Court disagreed. Reaffirming that federal law is the "exclusive law" on the OCS, the Court rejected a pre-emption type analysis to determine if state law is applicable on the OCS. Instead, the Court opined, "the question is whether federal law has already addressed the relevant issue; if so, state law addressing the same issue would necessarily be inconsistent with existing federal law and cannot be adopted as surrogate federal law. Put another way, to the extent federal law applies to a particular issue, state law in inapplicable." 139 S. Ct. at 1889. State law, the Court wrote, "serves a supporting role, to be adopted only where is a gap in federal law's coverage." *Id.* at 1892. "[I]f a federal law addresses the issue at hand, then state law is not adopted as federal law on the OCS." *Id.*

Applying that standard, the Supreme Court found that Newton's claims premised on the adoption of California law requiring payment for time spent on standby failed because federal law already addressed that issue. *Id.* at 1893 (quoting 29 C.F.R. § 785.23 (2018) ("An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises.")). The Court also found that Newton's claims relying on the adoption of the California minimum wage failed because the FLSA already provides for a minimum wage, even though the FLSA sets a minimum wage of "'not less than . . . $7.25 an hour,' and does not 'excuse noncompliance with any Federal or State law . . . establishing a [higher] minimum wage.'" 139 S. Ct. at 1893 (quoting 29 U.S.C. §§ 206(a)(1), 218). "[W]hatever the import of these provisions in an ordinary pre-emption case," the Court explained, "they do not help Newton here, for the question under the OCSLA is whether federal

4

law addresses the minimum wage on the OCS.  It does." 139 S. Ct. at 1893.

After the Supreme Court's opinion in *Parker Drilling*, Mauia amended his complaint, dropping his claims premised on California minimum wage and stand-by laws, *see* Second Am. Compl., ECF No. 22, and adding his FLSA claim.

**B.     Mauia's Claim for Meal Break Violations under California Law**

Petrochem asserts that under *Parker Drilling*, Mauia has no viable claim for meal break violations under California law because federal law already addresses the issue of meal periods.

California law requires that a first meal period be given no later than the start of an employee's sixth hour of work. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-42 (2012); 8 Cal. Code Regs. § 11160(10)(A); Cal. Lab. Code § 512(A).  A second meal period must be given no later than the start of the eleventh hour of work. *Brinker*, 53 Cal. 4th at 1042; 8 Cal. Code Regs. § 11160(10)(B); Cal. Lab. Code § 512(A).  When an employer fails to comply with these meal period requirements, it must pay an employee one hour of additional pay for each workday a meal period violation occurs.  Cal. Lab. Code § 226.7(c).  California law therefore provides a minimum number of meal periods that must be given, when they must be given, and a remedy for the employee if they are not.

The FLSA does not address meal periods (in fact, the word "meal" does not appear in the Act).  Petrochem, arguing otherwise, points to a regulation implementing the FLSA that it asserts does regulate meal periods when employers elect to provide them.  29 C.F.R. § 785.19(a) provides:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.

Petrochem also points to 29 C.F.R. § 785.19(b), which provides that employees need not be permitted to leave work premises during a meal period if otherwise freed from duties.  It argues that while the FLSA does not require meal periods, because the regulations do regulate the periods once they are given, federal law addresses the issue of meal periods and there is no gap in federal law for California law to fill.  Yet the regulation Petrochem cites falls under a part of a subchapter,

5

1   Part 785, relating to "hours worked." The regulation itself provides that "[t]his part [Part 785]
2   discusses the principles involved in determining what constitutes working time." 29 C.F.R. §
3   785.1. It's clear that the regulation concerns the computation of hours worked for purposes of
4   determining overtime pay, rather than regulating meal or rest periods. And again, the FLSA itself,
5   including the portion to which Petrochem cites, 29 U.S.C. § 207(a)(1), makes no mention of meal
6   or rest periods (section 207(a)(1) merely provides that employers must pay overtime).

7   Petrochem also argues that "there is an entire body of federal case law determining what
8   constitutes a 'bona fide meal period' under the regulations and when meal break time must be
9   compensated." Mot. at 14 (citing *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869,
10  876 (6th Cir. 2012) (holding that employee is not entitled to compensation for time spent working
11  during a meal period where employer had no knowledge of the work); *Sepulveda v. Allen Family
12  Foods, Inc.*, 591 F.3d 209, 216, n.4 (4th Cir. 2009) (holding that time spent donning and doffing
13  during meal periods is excluded from compensable work time under the FLSA); *Bernard v. IBP,
14  Inc. of Nebraska*, 154 F.3d 259, 265 (5th Cir. 1998) (finding evidence that employees had to keep
15  radios and tools on and were often interrupted during lunch supported jury's verdict that they were
16  not bona fide meal periods and therefore compensable under the FLSA); *Avery v. City of
17  Talladega, Ala.*, 24 F.3d 1337, 1347 (11th Cir. 1994) (finding evidence that employees sometimes
18  had to cut their break short or miss the break altogether supported that employees did not receive
19  bona fide meal periods)). That is to be expected, as the regulation requires that non-bona fide
20  meal periods be included in hours worked. But those courts were determining what constitutes a
21  "bona fide meal period," which the regulation defines for purposes of determining whether a
22  period should be counted in "worktime." The regulation doesn't say anything about whether those
23  periods must be provided, or when. Instead, it seems clear that the regulation was intended to
24  prevent employers from using pseudo-meal periods to shave hours off the clock.

25  Nor does the Court find particularly persuasive Petrochem's reference to 29 CFR § 785.19,
26  which provides that, "[i]t is not necessary that an employee be permitted to leave the premises if
27  he is otherwise completely freed from duties during the meal period." This also relates—
28  naturally, since it falls under Part 785—to determining hours worked: a meal period is a bona-fide

6

meal period, a period that is "not worktime," even if the employee must stay on premises to eat the meal. In short, the Court reads nothing in 29 C.F.R. § 785.19 or the Act which could be interpreted as saying, "Employers are not required to provide meal periods," as Petrochem contends.

Petrochem also points to the U.S. Department of Labor ("DOL") website, which says "[f]ederal law does not require lunch or coffee breaks." *Breaks and Meal Periods*, https://www.dol.gov/general/topic/workhours/breaks (last visited January 16, 2020). From this it concludes that because the FLSA does not require meal periods be provided, "federal law necessarily addresses when they must be given (never), how many must be given (zero), and the remedy for not being provided a meal period (nothing)." Mot. at 14. The Court is not persuaded by this argument. For one, the Court questions the probative weight of something posted on a DOL website designed as a guide to "help employees and employers learn their rights and responsibilities under Federal employment laws." *elaws – employment laws assistance for workers and small businesses*, https://webapps.dol.gov/elaws/ (last visited January 16, 2020). Second, to the extent the DOL website is probative, Mauia points out that the DOL website also states: "There are a number of employment practices which the FLSA *does not regulate*. For example, the FLSA does not require . . . (2) meal or rest periods, holidays off, or vacations . . . ." *elaws – Fair Labor Standards Act Advisor*, https://webapps.dol.gov/elaws/whd/flsa/screen6.asp (last visited January 16, 2020) (emphasis added). And that page later adds, "some states do have laws covering some of these issues, such as meal or rest periods," an apparent acknowledgement that while states may have such laws, the FLSA does not. And then again the page says "[t]he above matters," including meal or periods, "which are *not covered by the FLSA,* are generally for agreement between the employer and the employees or their authorized representatives." (emphasis added). Thus, the DOL website could reasonably be read as stating that the FLSA does not address meal periods.

Petrochem also asserts that, when comparing the California Labor Code and the FLSA, the Ninth Circuit has "recognized that 'the purpose of these statutes are [sic] identical, *i.e.*, to ensure that employers provide their employees with meal and rest breaks.'" Reply at 8 (quoting *Cal.*

7

1  *Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1043 (E.D. Cal. Mar. 20, 2009)).

2  However, Petrochem misreads *Cal. Dairies*. In that case, the District Court wrote that,

3  "[defendant] *argues* that these two bodies of law should be deemed 'similar' because '[t]he

4  purpose of these statutes are identical, i.e., to ensure that employers provide their employees with

5  meal and rest breaks,'" *id.*; the court did not find as much. This Court does not find the purposes

6  of the statutes are identical. And even if they were, that wouldn't necessarily mean there were no

7  gaps in the FLSA for California law to fill.

8  Finally, Petrochem points out that, since *Parker Drilling*, three decisions from the Central

9  District of California have addressed the applicability of California meal-and-rest-breaks law and

10  final pay on the OCS and have found state law does not apply. *Jensen v. Safety Equip. Corp.*,

11  2019 WL 4942052 (Sept. 4, 2019); *Hockison v. Baker Hughes Oilfield Operations*, 2019 U.S.

12  Dist. LEXIS 187704 (Oct. 25, 2019); *Newton v. Parker Drilling Mgmt. Services, Inc., et al.*, No.

13  15-cv-2517 (C.D. Cal. Nov. 7, 2019). The Court has reviewed those opinions and, respectfully,

14  differs in its analysis.[1] Petrochem's arguments, understandably, mirror the Central District's

15  analysis (largely identical) in *Jensen*, *Hockison*, and *Newton*. The Court has already discussed

16  why it finds those arguments unpersuasive. Additionally, the Central District in each of those

17  opinions found no "significant void or gap" in the FLSA that warranted applying California law.

18  The standard of a "significant void or gap" apparently comes from Fifth Circuit precedent. *See*

19  *Newton v. Parker Drilling Mgmt. Servs.*, 2015 U.S. Dist. LEXIS 191899, *6 (quoting *Cont'l Oil*

20  *Co. v. London S.S. Owners' Mut. Ins. Ass'n*, 417 F.2d 1030, 1036 (5th Cir. 1969)). While the

21  Supreme Court noted in *Parker Drilling* that its interpretation of the OCSLA "accords with the

22  standard long applied by the Fifth Circuit," 139 S. Ct. at 1889, this Court cannot find in Supreme

23  Court (or Ninth Circuit) precedent use of a standard of a "significant" void or gap.[2] The Supreme

---

[1] Nonetheless, the Court agrees with the *Jensen* court's conclusion that the meal-break claim in that case was barred. The *Jensen* plaintiffs alleged that because they could not leave the platforms during meal periods, those periods counted as worktime for which they should have been paid. Federal law explicitly addresses that issue, *see* 29 C.F.R. § 785.19(b), so California law on that point is inapplicable.

[2] The Supreme Court in *Gulf Shore* discussed state law filling "the substantial 'gaps' in the coverage of federal law," but it's apparent that the Court was referring to the abundance of gaps in the federal law, and not the significance of any one gap. *Gulf Offshore Co., Div. of Pool Co. v.*

Court in *Parker Drilling*, similar to in its earlier opinions,[3] referred only to a "gap in federal law's coverage," not a 'significant void or gap' in federal law. While the difference might seem trivial, the Court finds it—fittingly—significant: identifying a "significant gap" in federal law is a higher burden than pointing to a "gap in federal law's coverage."

    Finally, in *Parker Drilling*, the state-law claims the Supreme Court addressed had direct counterparts in federal law. For instance, the Court wrote, "some of [Newton's] claims are premised on the adoption of California law requiring payment for all time that Newton spent on standby." 139 S. Ct. at 1893 (citing Cal. Lab. Code § 510(a)). The Court found federal law already addressed that issue, specifically 29 C.F.R. § 785.23, which provides, "An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises." "Likewise," the Court wrote, "to the extent Newton's OCS-based claims rely on the adoption of the California minimum wage . . . the FLSA already provides for a minimum wage, 29 U.S.C. § 206(a)(1), so the California minimum wage does not apply." 139 S. Ct. at 1893. Petrochem insists that the regulation concerning pay for meal breaks is "no different" than the standby-time regulation discussed in *Parker Drilling*, but the comparison is not on point. The California law in *Parker Drilling* was one requiring payment for time spent on standby, and the federal law was a direct counterpart addressing the exact same issue. In this case, the California law addresses the availability of meal periods, and the regulation Petrochem relies on concerns computation of hours worked. Petrochem has pointed to no federal counterpart to California's meal period law.[4] It insists nonetheless that under the FLSA, employers are not required to provide meal breaks. But as discussed above, federal law is silent

---

*Mobil Oil Corp.*, 453 U.S. 473, 480-81 (citing *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355-59 ("Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.'")).

[3] *E.g.*, *Rodrigue*, *supra* note 2.

[4] The Court mentions this distinction not because it necessarily adopts the 'direct counterpart' standard Mauia advocates for in determining whether federal law leaves a gap, *see* Opp'n at 5-6—though that may be an appropriate standard in closer call situations—but to emphasize a difference between this case and *Parker Drilling*: in that case, the California laws had direct counterparts in federal law, whereas here federal law doesn't address the issue at all.

9

on the issue.[5,6]

The Court finds the FLSA does not address the issues that form the basis of Mauia's meal period claim. As such, California law is applicable.

**C.      Mauia's Claim for Rest Break Violations under California Law**

Petrochem also asserts that under *Parker Drilling*, Mauia has no viable claim for rest break violations under California law because federal law already addresses the issue.

California law requires that employers permit employees to take a rest period of ten minutes for each four-hour work period. *Brinker*, 53 Cal. 4th at 1028-29; 8 Cal. Code Regs. § 11160(11)(A). When an employer fails to comply with these rest period requirements, it must pay an employee one hour of additional pay for each workday a rest period violation occurs. Cal. Lab. Code § 226.7(c).

The FLSA does not address break periods (the word "rest" appears only once in the Act, in reference to "days of rest," when discussing the definition of "regular rate"). Petrochem's argument here mirrors that concerning meal periods. It points to a regulation implementing the FLSA which provides:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18. Petrochem argues that, although federal law does not require employers to provide rest breaks, it does regulate break periods when employers choose to provide them, and thus it addresses the issue. But as the Court discussed earlier, that part of the regulations, Part

---

[5] The Supreme Court in *Parker Drilling* acknowledged that there might be situations where "federal law might contain a deliberate gap, making state law inconsistent with the federal scheme." 139 S. Ct. at 1892 n. 2. The Court finds nothing suggesting Congress intended a deliberate gap here, and there is no federal scheme with which California law will interfere if applied.
[6] There's also a peculiar logic underlying Petrochem's argument that because the FLSA is silent on meal periods, it necessarily addresses the issue and provides that employers need not provide them. Following that logic, a whole slew of gaps in federal law might remain unfilled merely because federal law remained silent.

10

785, concerns regulating the computation of hours worked for purposes of determining overtime pay, rather than regulating meal or rest periods.

Petrochem also points again to the DOL webpage, which states, "Federal law does not require lunch or coffee breaks." *Breaks and Meal Periods*, https://www.dol.gov/general/topic/workhours/breaks (last visited January 16, 2020). But again, to the extent the DOL is probative, the same DOL webpage that Mauia cites is relevant here. *elaws – Fair Labor Standards Act Advisor*, https://webapps.dol.gov/elaws/whd/flsa/screen6.asp (last visited January 16, 2020) ("There are a number of employment practices which the FLSA *does not regulate*. For example, the FLSA does not require . . . meal or rest periods . . . . However, some states do have laws covering some of these issues, such as meal or rest periods . . . . [These matters] which are *not covered by the FLSA,* are generally for agreement between the employer and the employees or their authorized representatives." (emphasis added)).

The rest of the Court's analysis concerning the meal period claim is equally applicable here, with the same result. The Court finds the FLSA does not address the issues that form the basis of Mauia's break period claim. As such, California law is applicable.

### D. Mauia's Claim for Waiting Time Penalties

Plaintiff's claim for unfair competition under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, is derivative of and predicated on his allegations that Petrochem failed to provide lawful meal and rest periods. Petrochem's sole argument concerning this claim is that Mauia cannot maintain a standalone claim for unfair competition, and because he fails to state viable meal and rest break claims, the unfair competition claim fails as well. *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Because Mauia's meal and rest break claims survive, this argument is moot.

### E. Mauia's Claim for Failure to Timely Pay Final Wages

California law requires an employee's final wages be paid at the time of termination or, in the case of resignation, within 72 hours thereof. Cal. Lab. Code §§ 201-02. If an employer willfully fails to timely pay all final wages owed to an employee, Labor Code section 203 lays out

a remedy.

Petrochem argues that Mauia's final wages claim fails for two reasons: (1) federal law already addresses the timing of the payment of wages; and (2) the claim is wholly derivative of Mauia's meal and rest break claims. Petrochem's second reason fails right away, as the Court has found Mauia's meal and rest break claims are viable. The Court turns to Petrochem's first reason.

The Ninth Circuit has held that "under the FLSA wages are 'unpaid' unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993). "Section 216(b) then provides that an employer who violates § 206," by not paying wages on time, "is liable to the affected employees 'in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.'" *Id.* at 1539 (quoting 29 U.S.C. § 216(b)). "The Act also requires employers to pay overtime compensation, 29 U.S.C. § 207(a)(1), and the provisions for liability apply to overtime as well as" wages. *Id.* at 1539 n. 7. Thus, the FLSA provides for when wages are due—an employee's regular payday—and provides a remedy for when they are not paid on time.

Mauia argues that *Biggs* is inapposite, since it does not discuss any requirements of federal law with respect to the timing of an employee's final paycheck. Opp'n at 14. But the FLSA provides that, "[e]very employer shall pay [wages] to each of his employees . . . who in any workweek . . . is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. § 206(b). The obligation to pay wages "kicks in once an employee has done covered work in any workweek." *Biggs*, 1 F.3d at 1539. Although the Act does not explicitly address when an employer must pay a final paycheck, by operation of the Act it must pay whatever wages an employee has earned in a week at the employee's regular payday. The Act "contemplate[s] a time at which § 206 is violated, or, put another way, when minimum wages become 'unpaid,'" *id.*; that time is the employee's regular pay date, and the Court is aware of no exception for terminated employees. The FLSA might not offer as good protection as California law, but that does help Mauia's case. *See Parker Drilling*, 139 S. Ct. at 1893 (California minimum wage law did not apply on OCS even though the FLSA does not "excuse noncompliance with . . . State law . . . establishing a [higher] minimum wage," 29 U.S.C. § 218,

12

because federal law addresses the minimum wage on the OCS); *id.* ("[W]hatever the import of these provisions in an ordinary pre-emption case, they do not help Newton here[.]").  The FLSA, as interpreted by the Ninth Circuit, sufficiently addresses the issue of when an employer must pay wages, including final wages, to an employee.  California final-wage law is not adopted.  Mauia's final-wage claim is dismissed with prejudice.

**F.     Mauia's FLSA Claim**

Mauia asserts his FLSA claim on behalf of what he calls a collective of "each and every current and former hourly employees [sic] of [Petrochem], who, at any time within three years from the date of filing of this lawsuit . . . worked on [sic] over 40 hours in a single workweek on an oil platforms [sic] off the any [sic] coast of the United States . . . ."  TAC ¶ 3.  Mauia asserts that Petrochem's violations of the FLSA were willful and in bad faith.  *Id.* ¶ 62.  Petrochem asserts that Mauia's FLSA claim is untimely and thus barred by the statute of limitations.

An action under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]"  29 U.S.C. § 255.  A collective action under the FLSA commences "on the date when the complaint is filed, if [the individual claimant] is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought."  *Id.* § 256(a).  Where a written consent form is not filed with the compliant, the action is deemed commenced "on the subsequent date on which such written consistent is filed in the court in which the action was commenced."  *Id.* § 256(b).  The written consent is key.

Here, Mauia belatedly filed a written consent form, thus attempting to properly commence an FLSA action, on January 15, 2020, the day before the hearing on Petrochem's Motion to Dismiss and nearly four years after the end of his employment in March 2016, the latest his claim could have accrued.  Moreover, although Mauia's original complaint was filed on February 20, 2018, he did not assert his FLSA claim until he filed his Third Amended Complaint on September 10, 2019, more than three years after the end of his employment.  Accordingly, Mauia did not

13

even assert his FLSA claim until approximately six months after the statute of limitations had expired. And in fact, Mauia does not contest that he asserted his FLSA claim outside the statute of limitations. *See* Opp'n at 19 ("An otherwise time-barred claim in an amended pleading . . . .").

Mauia argues that it would have been "nonsensical to require that [he] to [sic] have presciently filed an FLSA consent form, which would have directly conflicted with, and thereby weakened the theory of his case which relied on the applicability of California law as 'surrogate federal law' under the then-controlling opinion of the Ninth Circuit in *Newton v. Parker Drilling*, under which he was prosecuting five causes of action, years before the exclusive authority for the FLSA was established by the Supreme Court." *Id.* at 22. However, litigants routinely plead alternative, even inconsistent, theories of relief, and the Federal Rules expressly permit doing so. Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."), (3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). And the Ninth Circuit in *Newton* held that those California's laws were "applicable and not inconsistent" with the FLSA, not that they replaced federal law on the OCS.[7] Finally, Mauia's excuse for not asserting FLSA claims earlier, even if a legitimate one, would not explain why he did not file a written consent until the day before the hearing. His claim is time-barred.

Mauia argues, however, that his FLSA claim relates back to the filing of his original complaint. The relation back doctrine provides that an "otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2004). An amendment relates back to the date of the original pleading if, *inter alia*, "the law that provides the applicable statute of limitations allows relation back," or, the amendment asserts a claim that "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(A), (B). The FLSA, by its express terms, provides that an action is commenced "only when the complaint and the plaintiff's written consent is filed," that a complaint filed without a

---

[7] Indeed, the plaintiff in *Newton* had not brought any FLSA claims.

14

1   written consent does not commence an action until the "subsequent date on which such written

2   consent is filed," and that "every such action shall be forever barred unless commenced within the

3   applicable statute of limitations period." 29 U.S.C. §§ 255(a), 256.

4      Mauia's relation-back argument fails. Even though Mauia eventually did file a consent,

5   several district courts in this Circuit and others have held that the written consent required by the

6   FLSA does *not* relate back to the filing of a complaint. *See, e.g.*, *Hockison*, 2019 U.S. Dist.

7   LEXIS 187704, at *16; *Lemus v. Denny's Inc.*, 2014 WL 12772284, at *4 (S.D. Cal. July 14,

8   2014) (granting summary judgment on FLSA claim and writing, "Here, it is undisputed that

9   Plaintiff has not filed a written consent. Moreover, even if he were to file a written consent now,

10  almost four years after the filing of the original complaint, it would not 'relate back' to the filing

11  of the original pleading.") (citing *Cancilla v. Ecolab, Inc.*, 2013 WL 1365939, at *3, n. 5 (N.D.

12  Cal. Apr. 3, 2013) ("collective action claims 'cannot be rescued by the "relation back" doctrine'")

13  (quoting *Ochoa v. Pearson Educ., Inc.*, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012)); *Ketchum*

14  *v. City of Vallejo*, 2007 WL 4356137, at *2, n. 9 (E.D. Cal. Dec. 11, 2007) ("Signed consents filed

15  after the filing of the complaint do not relate back to the date the complaint was filed.") (citing

16  *Kuhn v. Philadelphia Elec. Co.*, 487 F. Supp. 974, 975 (E.D. Pa. 1980) ("Signed consents filed

17  after the filing of the complaint do not relate back to the date the complaint was filed."); *Lee v.*

18  *ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) ("Signed consents do not relate back

19  to the original filing date of the complaint.")); *Smith v. Micron Elecs., Inc.*, 2005 WL 5328543, at

20  *4 (D. Idaho Feb. 4, 2005) ("Courts have held that the statute of limitations stops running on

21  named plaintiffs and later opt-in claimants on the day the notice of consent is filed, and that

22  written consents do not relate back to the date of the filing of the complaint.") (citing cases from a

23  number of courts).

24     Mauia points to one case, *Newton v. Parker Drilling*, 2:15CV02517(RGK) (C.D. Cal.),

25  where on remand from the Supreme Court, the Central District found that the plaintiff's newly

26  added FLSA claims did relate back to the original pleading. Dkt. No. 57. However, in that case

27  the parties apparently proceeded on the premise that the relation back doctrine applies to FLSA

28  collective actions. Dkt. No. 50-1 (Mot. to Dismiss) at 13-15. There's no indication the court was

presented with the argument that FLSA's statutory scheme prevented relation back or that it considered that line of cases which hold that it does.

Finally, equitable tolling is not appropriate here. At oral argument, Mauia admitted what had been apparent: that he "strategically chose" not to asset his FLSA claim earlier in the litigation, and that it was a "judgment call to not plead in the alternative." That strategic choice, though yielding unfortunate results for Mauia, is not the type of extraordinary circumstance warranting equitable tolling. *See Mishewal Wappo Tribe of Alexander Valley v. Zinke*, 688 Fed. Appx. 480, 482 (9th Cir. 2017) (equitable tolling appropriate where party 'diligent pursues' its rights or where "extraordinary circumstances prevented it from doing so") (citing *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013)); *Conerly v. United States Postal Service*, 1991 U.S. App. LEXIS 26620, at *3 ("Equitable tolling is appropriate where the complainant was prevented from asserting a claim due to wrongful conduct of the defendant or where extraordinary circumstances beyond the complainant's control made it impossible to file a timely claim.") (citing *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991)).

Mauia's FLSA claim is time-barred.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Petrochem's Motion to Dismiss. Plaintiff's Fourth and Fifth Causes of Action are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: January 16, 2020

THOMAS S. HIXSON
United States Magistrate Judge

16