1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Marlin McClure, an individual, for            No. 2:18-cv-01726-KJM-AC
      himself and those similarly situated,
12                                                   ORDER
                            Plaintiff,
13
14          v.

15

16    Brand Energy Service, LLC, et al.,

17                          Defendants.

18

19          Plaintiff Marlin McClure moves for preliminary approval of settlement of his class,

20    collective and PAGA claims.  Mot., ECF No. 60.[1]  Defendant Waveland Services, Inc. filed a

21    statement of non-opposition.  ECF No. 61.  The court **grants** the motion as explained below.

22    **I.     BACKGROUND**

23          Waveland employed plaintiff as a sandblaster painter, supervisor, and relief foreman on an

24    oil platform off California's coast.  Second Am. Compl. ("SAC") ¶ 10, ECF No. 59; McClure

25    Decl. ¶ 2, ECF No. 64.  Plaintiff and similarly situated employees worked twelve-hour shifts

26    daily with one 30-minute meal period and two rest periods.  SAC ¶ 4.  He alleges Waveland did

_____

[1] For clarity, page numbers cited here are these applied by the court's CM/ECF system, located at the top of each page.

1

1   not pay employees meal or rest period premiums and did not itemize meal and rest period

2   earnings in employees' wage statements.  *Id.* ¶ 5.  He also alleges Waveland provided free meals

3   and lodging to him and similarly situated employees but did not account for the value of these

4   meals and lodging when calculating overtime wages.  *Id.* ¶ 6.  Finally, he alleges Waveland did

5   not pay minimum wages to him and other similarly situated employees.  *Id.*

6          While this case was pending, the Supreme Court granted certiorari in *Parker Drilling*

7   *Management Services, Ltd. v. Newton*.  *See* 139 S. Ct. 914 (2019).  In *Parker*, the Court agreed to

8   consider whether California law would be adopted as surrogate federal law under the Outer

9   Continental Shelf Lands Act ("OCSLA") § 4 (43 U.S.C. § 1333(a)(2)(A)).  Petition for Writ of

10  Certiorari, *Parker Drilling Mgmt. Servs.*, 139 S.Ct. 914 (No. 18-389).  The Court's decision to

11  hear *Parker Drilling* had significant implications for the value and viability of plaintiff's claims

12  here.  Originally, plaintiff's minimum wage claims were based solely on California wage and

13  hour law, which plaintiff insisted applied to the Outer Continental Shelf ("OCS"), First Am.

14  Compl. ¶¶ 1–9, ECF No. 17, and plaintiff relied heavily on the Ninth Circuit's ruling in *Newton v.*

15  *Parker Drilling Management Services, Ltd.*, 881 F.3d 1078, 1099 (9th Cir. 2018), the decision for

16  which the Supreme Court granted certiorari.  Mot. to Stay ¶ 5, ECF No 26.  The parties thus

17  executed a tolling agreement that would permit certain amendments to the complaint, and the

18  court stayed this litigation until the Supreme Court issued its decision in *Parker Drilling*.  *See*

19  Ellison Decl. ¶¶ 18 & 19, ECF No. 60-1; Order to Stay, ECF No. 27.

20         In its decision, the Supreme Court held that California wage and hour law does not

21  operate as surrogate federal law under OCSLA.  *Parker Drilling*, 139 S. Ct. 1881, 1893 (2019).

22  The Court dismissed Newton's state law overtime and minimum wage claims and remanded the

23  remaining state law claims for the lower court to determine the extent to which other California

24  labor law could be adopted and applied to the OCS.  *Id.*  The Court's decision was adverse to

25  plaintiff in this case because it meant plaintiff's claims for state minimum wages and overtime

26  "fail[ed] as a matter of law" and the viability of his other state law claims remained unsettled.

27  Mot at 23–24.  Plaintiff sought to file a second amended complaint to replace his state law

28  overtime and minimum wage claims with overtime claims under federal law and clarify that the

1   remaining state law claims survived because there are no federal laws applicable to the issues

2   relevant to his case.  Mot. for Leave to File Second Am. Compl. at 4, ECF No. 36.  The parties

3   stipulated to plaintiff's filing of the second amended complaint, which is the operative complaint.

4   *See* Stip., ECF No. 55; Minute Order, ECF No. 57; SAC ¶ 9.  The amended complaint includes

5   claims under the California Labor Code, the federal Fair Labor Standards Act ("FLSA"), and

6   California's Unfair Competition Law ("UCL").  SAC ¶¶ 6–9.  Plaintiff also seeks civil penalties

7   under California's Private Attorney General Act ("PAGA"), Cal. Labor Code § 2698 *et seq.  Id.*

8   ¶ 68.

9         The complaint is styled as a putative Rule 23 class action and FLSA collective action.  *Id.*

10  ¶¶ 18, 24.  The Rule 23 class (the "California class" or "putative class") would include those with

11  state law claims, i.e., plaintiff and any similarly situated hourly employees who, in the four years

12  before this case began, worked shifts of twelve hours or more on oil platforms off the coast of

13  California.  *Id.* ¶ 18.  The FLSA collective would include plaintiff and any similarly situated

14  hourly employees who, within the three years before this case began, worked more than forty

15  hours in a single workweek on oil platforms off any coast of the United States and who were

16  given meals, lodging, or both in addition to their wages.  *Id.* ¶ 24.

17        The parties reached an agreement to settle the proposed class and collective claims after

18  participating in mediation with Steven G. Pearl, who has been recognized as "a well-respected

19  mediator in wage and hour matters."  *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-6036,

20  2019 WL 8633664, at *8 (C.D. Cal. Sept. 30, 2019).  Waveland agreed to pay a "Gross

21  Settlement Value" of $290,000.00.  Settlement Agreement ¶¶ 30–33, ECF No. 60-2.  Under an

22  "escalator clause," if by the time of preliminary approval, the number of individuals in either the

23  California class or the FLSA collective has increased by 7 percent or more, Waveland will

24  increase the gross settlement value on a pro-rata basis by a percentage equal to the percentage

25  increase in the class or collective size.  Settlement Agreement ¶ 58(g).  Waveland may terminate

26  the settlement agreement if more than 7 percent of the California class members opt out.  *Id.* ¶ 86.

27        Several deductions would be taken from the gross settlement value before it is distributed

28  to the California class and the FLSA collective.  First, Waveland agreed not to object to an

1  attorneys' fee award of up to 33 percent of the Gross Settlement Value, or $95,700, and an award

2  of litigation expenses of up to $7,500.  *See id.* ¶¶ 2, 20.  Second, the agreement proposes a

3  "service" or incentive award of $5,800 to plaintiff.  *See id.* ¶ 49.  Third, under California law, the

4  California Labor and Workforce Development agency will be paid 75 percent of any amounts

5  awarded under the PAGA.  *See* Cal. Lab. Code § 2699(i).  Here, that provision results in an

6  effective deduction from the total settlement amount of $5,800 with $4,350 being paid to the

7  California Labor and Workforce Development Agency (LWDA) and the remaining 25 percent

8  paid to the California class members.  *See* Settlement Agreement ¶ 42.  Fourth, the Gross

9  Settlement Value would be reduced by the amount of any administration costs, but the agreement

10  limits that deduction to $12,500.  *Id.* ¶¶ 2, 38.  Any administration costs greater than $12,500 will

11  be deducted from the proposed fee and expense awards to counsel.  *Id.*  After these deductions,

12  the estimated Net Settlement Value at the time the settlement agreement was reached was

13  $162,700.00, just above half of the Gross Settlement Value.  *Id.* ¶ 38.  From the Net Settlement

14  Value, 40 percent would be distributed to the California class and 60 percent would be distributed

15  to the FLSA collective.  *Id.*  The payments to each employee would be prorated by the number of

16  weeks they worked at Waveland.  Mot. at 18–20.

17        If this court approves the settlement agreement, a settlement administrator would

18  distribute two notice packets within twenty days of the court's order granting preliminary

19  approval.

20        First, the administrator would send a notice packet to California class members.

21  Settlement Agreement ¶ 68.  California class members will not be required to submit a claim

22  form to receive a distribution, but they may opt out or object within forty-five days.  Mot. at 19–

23  20.  Once checks are delivered, checks not cashed after ninety days would be voided.  Mot. at 20.

24  If the value of voided checks exceeds $20,000, the unclaimed funds will be reallocated pro rata to

25  those who did cash their checks.  Settlement Agreement ¶ 81.  If the value of unclaimed funds

26  does not exceed $20,000, the amount would be "allocated to a suitable *cy pres* recipient,

27  including at Plaintiff's choice, the Legal Aid Foundation of Los Angeles."  *Id.*

28  /////

4

1    Second, the settlement administrator would send a notice packet to FLSA collective

2    members.  *Id.* ¶ 68.  The packet will advise the class members of their minimum settlement

3    allocations and the opportunity to opt into the FLSA collective.  *Id*. ¶¶ 68–69.  Recipients would

4    have forty-five days to opt in.  *Id*. ¶¶ 69–72.  The settlement administrator will follow up each

5    week of the forty-five-day period by phone and email.  *Id*.  The allocation for any member that

6    does not opt in will be reallocated on a pro rata basis to collective members that are participating

7    upon distribution of the relevant settlement funds.

8    **II.    LEGAL STANDARD**

9        "Courts have long recognized that 'settlement class actions present unique due process

10   concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

11   946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),

12   *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  In

13   settlement classes, the class's motivations may not perfectly square with those of its attorneys.

14   *See id.*  An attorney representing a settlement class may be tempted to accept an inferior

15   settlement in return for a higher fee.  *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125

16   (9th Cir. 2002).  Likewise, defense counsel may be happy to pay his counterpart a bit more if the

17   overall deal is better for his client.  *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel*

18   *Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class

19   can be "vehicle for collusive settlements that primarily serve the interests of defendants—by

20   granting expansive protection from law suits—and of plaintiffs' counsel—by generating large

21   fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome

22   claims.").  In addition, if the settlement agreement is negotiated before the class is certified, as it

23   has been in this case, the potential for an attorney's breach of fiduciary duty looms larger still.

24   *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

25       As the Ninth Circuit has recognized, however, the "governing principles may be clear, but

26   their application is painstakingly fact-specific," and the court normally sees only the final result

27   of the parties' bargaining.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  "Judicial

28   review also takes place in the shadow of the reality that rejection of a settlement creates not only

1    delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved

2    for the putative class put at risk." *Id.*  Federal courts have long recognized a "strong" policy in

3    favor of settling class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D.

4    Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

5        Here, as summarized above, plaintiff requests both preliminary approval to represent a

6    class under Rule 23 and conditional certification of a FLSA collective action.  Different legal

7    standards apply to these requests.

8        Under Rule 23, before notice of a proposed settlement can be sent to a class, the court

9    must determine that it "will likely be able to" both (1) "certify the class for purposes of the

10    judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P.

11    23(e)(1)(B).  The first requirement, likelihood of class certification, requires the plaintiffs to

12    satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three

13    categories of Rule 23(b).  *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir.

14    2020).  The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of

15    the settlement for absent class members.  The court evaluates preliminarily whether the proposed

16    settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such

17    as whether the parties negotiated at arm's length and the terms of any agreement on fee awards.

18    *See* Fed. R. Civ. P. 23(e)(2)(A)–(D).  Over the years, the Ninth Circuit has also listed several

19    "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength

20    of the plaintiffs' case and the amount of fees in proportion to the compensation to class members.

21    *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597,

22    610–11 & nn.18–19 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*,

23    139 S. Ct. 2645 (2019).

24        The requirements for certification of FLSA collective actions, by contrast, have developed

25    in decisional law.  Litigation normally proceeds in two phases: first, as here, in response to a

26    plaintiff's motion for preliminary certification, when the court applies a "lenient" standard to

27    decide whether notice may be given to those who may opt into the collective action, and second

28    in response to a post-discovery motion to decertify, to which a summary-judgment-like

evidentiary standard applies.  *See Campbell v. City of Los Angeles*, 903 F.3d at 1109, 1119 (9th

Cir. 2018).  At both stages, the members of the collective action must be "similarly situated" to

the original plaintiff or plaintiffs.  *Id.* at 1109 (citing 29 U.S.C. § 216(b)).  "Party plaintiffs are

similarly situated, and may proceed in a collective, to the extent they share a similar issue of law

or fact material to the disposition of their FLSA claims."  *Id.* at 1117.

If FLSA claims are settled, the settlement must be approved by either the Secretary of

Labor or a federal district court.  *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir.

2015) (unpublished) (citing *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)).  In

the absence of Supreme Court or Ninth Circuit guidance, district courts often assess whether the

settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  A dispute is

"bona fide" if there are "legitimate questions" about the defendant's FLSA liability.  *Selk v.

Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  Courts often

consider many of the same factors that guide preliminary certification of Rule 23 class actions.

*See Maciel v. Bar 20 Dairy, LLC*, No. 17-00902, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23,

2018).

The notice requirements of Rule 23 and the FLSA also differ.  For classes likely to be

certified under Rule 23(b)(3), "the court must direct to class members the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be by mail,

electronic means, "or other appropriate means."  *Id.*  Rule 23 also imposes specific requirements

on the contents of the notice.  *See* Fed. R. Civ. P. 23(b)(2)(B)(i)–(vii).  The FLSA is less specific.

It provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his

consent in writing to become such a party and such consent is filed in the court in which such

action is brought."  29 U.S.C. § 216(b).  Courts have understood this language as requiring

written consent filed with the court, albeit not in formal holdings.  *See, e.g.*, *Genesis Healthcare

Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("[E]mployees . . . become parties to a collective action

only by filing written consent with the court." (citation omitted)).

# III.    DISCUSSION

## A.    California Class

Plaintiff first seeks preliminary certification of the proposed California class under Rule 23.  Mot. at 17–21.  The California Class includes "all current and former hourly employees of Defendant, who worked for Defendant on oil platforms off the California coast for shifts of 12 hours or more during the California Class Period."  Settlement Agreement ¶ 3.  As summarized above, Rule 23(a) imposes four prerequisites on every class.  If these prerequisites are satisfied, the proposed class must fit the requirements of one of the three subsections of Rule 23(b).  Finally, Rule 23(e) imposes several additional requirements when, as here, the parties have proposed to settle a putative class action.

### 1.    Rule 23(a)—Prerequisites

First, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Joinder is "impracticable" when it is difficult or inconvenient.  *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL 280294, at *4 (E.D. Cal. Jan. 22, 2019) (citing *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)).  Although "no fixed number . . . satisfie[s] the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."  *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012).  Here, there are approximately eighty-two California class members.  Ellison Decl. ¶ 21.  Joinder of each putative member would be impracticable.  The numerosity requirement is satisfied.

Second, a proposed class can be certified only if there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The court considers "the capacity of [the] classwide proceeding to generate common answers" and takes note of "[d]issimilarities within the proposed class [] [that] have the potential to impede the generation of common answers."  *See Millan v. Cascade Water Servs., Inc.*, 310 F. R. D. 593, 604 (E.D. Cal.

2015) (quoting *Dukes*, 564 U.S. at 350) (internal quotation marks omitted).  "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 10-02354, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F. 3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). That is likely to be true here.  Plaintiff asserts claims arising from uniform wage and hour policies and practices applied to employees on all Waveland oil platforms, whether in California coastal waters or the OCS.  Ellison Decl. ¶ 7; McClure Decl. ¶ 11.  This case presents common questions suitable to resolution "in one stroke" in a class action.  *Dukes*, 564 U.S. at 350.  Thus, the commonality requirement is met.

Third, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled in part on other grounds by Dukes*, 564 U.S. at 338)).  Under this "permissive" requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020).  Here, plaintiff alleges he was not properly compensated under policies applicable to the entire California class.  His claims, and the defenses to them, are identical to those of the other proposed class members.  *See* McClure Decl. ¶¶ 7–13 (explaining he brought this action based on wage and hour "limitations and conditions [he believes] were identical for everyone in this putative class. . . [based on his] interaction with co-workers" and review of relevant policies).  Therefore, the typicality requirement is satisfied.

Fourth, the class representatives and their counsel must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts consider both whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [] the

9

1    named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]"

2    *Hanlon*, 150 F.3d at 1020.  "Serious conflicts of interest can impair adequate representation by

3    the named plaintiffs, yet leave absent class members bound to the final judgment, thereby

4    violating due process."  *In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab.*

5    *Litig.*, 895 F.3d 597, 607 (9th Cir. 2018).  Here, plaintiff avers he could have initiated the action

6    on his own behalf but he "wanted Waveland to pay for the damages it was causing" to him and

7    his coworkers.  McClure Decl. ¶ 18.  In his contingency fee agreement with Strauss & Strauss

8    APC, plaintiff agreed to pay litigation costs if he lost the case.  *Id*. ¶ 24.  Although this

9    contingency fee agreement naturally motivates plaintiff to pursue the case vigorously, it also

10   encourages settlement, possibly at the expense of meritorious claims.  As discussed below,

11   however, the settlement is fair and reasonable in light of the controlling law, so this potential

12   conflict is not a bar to the adequacy of plaintiff's representation of the proposed class.  Finally,

13   plaintiff spent "about 40 hours working on this matter": reading pleadings and filings, working on

14   discovery, tracking down witnesses, discussing the case with class members, and discussing the

15   case with his attorneys.  *Id*. ¶ 20.  Plaintiff's representation is adequate.

16        As discussed below in addressing the appointment of class counsel, Strauss & Strauss,

17   APC is also adequate to represent the interests of the class with no apparent conflicts.

18        The plaintiff's claims here are thus likely to satisfy the four prerequisites of Rule 23(a).

19                **2.**        **Rule 23(b)—Type of Proposed Class**

20        Plaintiff seeks certification under Rule 23(b)(3).  A Rule 23(b)(3) class may be certified

21   only if (1) "the questions of law or fact common to class members predominate over any

22   questions affecting only individual members" and (2) "a class action is superior to other available

23   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The

24   predominance inquiry asks whether the common, aggregation-enabling, issues in the case are

25   more prevalent or important than the non-common, aggregation-defeating, individual issues."

26   *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and internal quotation

27   marks omitted).  "The superiority inquiry . . . requires determination of whether the objectives of

28   the particular class action procedure will be achieved in the particular case," which "necessarily

involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*,

150 F.3d at 1023 (citation omitted).  Rule 23 lists "non-exclusive factors" to consider:

> (A)   the class members' interests in individually controlling the prosecution or
>         defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already
>         begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims
>         in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1023.

Wage and hour class actions are likely to be certified under this standard when "the major

questions in [the] case arise from [the defendant's] alleged failure to properly calculate wages and

overtime, account for meal periods and rest periods, and provide reimbursements." *Smothers*,

2019 WL 280294, at *7.  That may be true even when some factual questions call for

individualized evidence.  *See, e.g.*, *Pena v. Taylor Farms Pacific*, 305 F.R.D. 197, 213–22 (E.D.

Cal. 2015), *aff'd*, 690 F. App'x 526 (2017), *cert denied*, 138 S. Ct. 976 (2018).  An employer's

uniform policies often predominate when they apply to the entire putative class and when class

members did or do the same or similar work.  *See, e.g.*, *Abdullah v. U.S. Sec. Assocs., Inc.*,

731 F.3d 952, 965 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7.  The court may not,

however, "rely on uniform policies 'to the near exclusion of other relevant factors touching on

predominance.'"  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F. 3d 952, 965 (9th Cir. 2013) (quoting

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F. 3d 953, 955 (9th Cir. 2009)).

Here, plaintiff avers common questions of law and fact predominate because all class

members were subject to the same policies "with respect to meal breaks, rest breaks, and final

payment of wages."  Mot. at 32.  All class members have the same employer, Waveland, and

worked at least 12-hour shifts while confined to oil platforms off the California coast.  SAC ¶ 2.

Furthermore, the claims arise from activities in a highly regulated industry "where uniformity is

paramount."  Mot. at 32.  The primary questions in this case turn on policies and procedures that

allegedly applied uniformly to all proposed class members.  On this record it does not appear this

1    case will require extensive fact-intensive inquiry into the circumstances of individual plaintiffs.

2    The court finds preliminarily the questions common to the class predominate.

3         Plaintiff maintains this action is the superior method of resolving the controversy because

4    all California class were subject to the same policies.  He argues, "[t]he straightforward relief

5    sought . . . and the evidence bearing thereon, is markedly less complicated than other cases where

6    multiple working locations necessarily lends itself [sic] to disparate enforcement of policies."

7    Mot. at 32.  Plaintiff argues the "highly regulated nature of the oil-extraction industry" and the

8    need for rigid uniformity in enforcement of policies on oil platforms, makes a single action the

9    most efficient method of addressing this controversy.  *Id.*  While plaintiff alleges the policies

10   were applied evenly on all such platforms, he also concedes "[his] knowledge of this is limited to

11   [his] interaction with co-workers and [his] review of corporate handbooks/policies shared by

12   counsel, as well as policies imposed by Waveland."  McClure Decl. ¶ 11.  The court finds the

13   record at this stage supports a preliminary finding the class action is the superior method for

14   resolving this matter.

15        In sum, the proposed class appears likely to be certified under Rule 23(b)(3) at this

16   preliminary stage.

17            **3.     Rule 23(e)—Preliminary Certification and Approval**

18        Under Rule 23(e), a class action may be settled "only with the court's approval," and the

19   court may provide such approval "only after a hearing and only on finding that it is fair,

20   reasonable, and adequate . . . ." after considering whether:

21   (A)    the class representatives and class counsel have adequately represented the
22          class;

23   (B)    the proposal was negotiated at arm's length;

24   (C)    the relief provided for the class is adequate, taking into account:

25          (i)     the costs, risks, and delay of trial and appeal;

26          (ii)    the effectiveness of any proposed method of distributing relief to the
27                  class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Ninth Circuit decisions predating this rule list several similar factors for district courts to consider when weighing a proposed settlement agreement:

- "the strength of the plaintiffs' case";
- "the risk, expense, complexity, and likely duration of further litigation";
- "the risk of maintaining class action status throughout the trial";
- "the amount offered in settlement";
- "the extent of discovery completed and the stage of the proceedings";
- "the experience and views of counsel";
- "the presence of a governmental participant"; and
- "the reaction of the class members to the proposed settlement."

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors listed in existing judicial decisions).

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'"  *In re Volkswagen*, 895 F.3d at 610–11 (quoting *Bluetooth*, 654 F.3d at 946–47).  Three oft-cited "red flags" of unfair settlements are (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection, and (3) agreements that permit unpaid fees to revert to defendants.  *Bluetooth*, 654 F.3d at 947 (citations omitted).

Here, many of these factors suggest the proposed settlement is fair, reasonable and adequate.  The court has already noted the arm's-length negotiations and adequacy of Mr.

1    McClure's representation as plaintiff, given the time he has dedicated to the case and his verified

2    explanation of his role.  The proposed settlement also appears fair, reasonable and adequate given

3    the strength and weaknesses of the California Class's claims, as explained below.

4        Plaintiff concedes his claims reduced in value significantly once the Supreme Court's

5    ruling in *Parker Drilling* foreclosed the applicability of California labor law to several claims

6    arising from work on the OCS.  Mot. at 23 ("under the *Parker Drilling* decision, Plaintiff's claims

7    for minimum wages and overtime fail as a matter of law.").  While plaintiff maintains his other

8    claims under California law survive the decision in *Parker Drilling*, the relevant district court

9    cases addressing similar claims under the *Parker Drilling* standard are divided with the weight of

10   this persuasive authority largely against plaintiff.  *Jensen v. Safety Equip. Corp.*, No. 2:18-02890,

11   2019 WL 4942052, at *3–4 (C.D. Cal. Sept. 4, 2019) (finding FLSA, not California law, applies

12   and dismissing claims based on California Labor Code, California's Unfair Competition Law and

13   PAGA); *Newton v. Parker Drilling Mgmt. Servs., Inc.*, No. 2:15-02517, 2019 WL 7865197, at

14   *3–5 (C.D. Cal. Nov. 7, 2019) (same); *but see Mauia v. Petrochem Insulation, Inc.*, No. 18-

15   01815, 2020 WL 264669, at 3–6 (N.D. Cal. Jan. 16, 2020) (finding some California Labor Code

16   provisions adopted as surrogate federal law applicable to actions arising with respect to the OCS).

17       As plaintiff's counsel observes, issues of first impression following *Parker Drilling* would

18   likely engender appeals if this litigation goes further, injecting ongoing uncertainty, expense, and

19   delay into the case.  Strauss Decl. ¶ 6.  The parties engaged in significant negotiation in the

20   shadow of unresolved legal issues.  *See* Ellison Decl. ¶ 15 (describing unsuccessful in-person

21   settlement conference and mediation while certiorari petition was pending).  Other factors

22   unrelated to the certiorari petition also injected risk into continuing to litigate, including the

23   discretionary nature of PAGA penalties, a scienter requirement for waiting-time penalties under

24   California law, Waveland's continued assertion of defenses, and Waveland's contention workers

25   on each separate oil platform were subject to different conditions.  Ellison Decl. ¶ 41.

26       Plaintiff values the total damages allocated to California state law claims, inclusive of

27   meal and rest period claims and Labor Code section 203 penalties, but excluding PAGA

28   penalties, attorney's fees and interest, at $363,000.  Mot. at 23, Ellison Decl. ¶ 40.  In light of the

foregoing risks and uncertainties, it is reasonable to apply a discount to the class, bringing the total amount down to $64,530.  *See Curtis, et al., v. Irwin Indus., Inc.*, No. 15-2480, 2020 WL 9457057, at *7 (C.D. Cal. Dec. 2, 2020) (finding gross settlement amount of $400,000 justified despite plaintiffs' original $14 million valuation of their claims based on *Parker Drilling* decision and collective bargaining agreement between parties).

Other elements of the proposed settlement agreement, however, weigh against preliminary approval under Rule 23(e).  First, a disproportionate award to counsel is a "subtle sign that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Bluetooth*, 654 F. 3d at 947 (citations omitted).  The proposed settlement includes an award of attorneys' fees up to 33 percent of the Gross Settlement Value.  Mot. at 18; Settlement Agreement ¶ 20.  The benchmark for attorney's fees in the Ninth Circuit is 25 percent. *See In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018), though courts in this district have approved fees at 33 percent of the settlement fund for matters involving state law claims, *see Rodriguez v. Penske Logistics, LLC*, No. 14-2061, 2019 WL 246652, at *12–*13 (E.D. Cal. Jan. 17, 2019) (approving attorney's fees representing 31.2% of common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (approving attorney's fees in amount of 33.3% of common fund in settlement of wage-and-hour putative class action). Departures from that benchmark are possible only if properly supported and justified.  The record here does not include that support and justification.  Nor has counsel provided the court with information that would make it possible to cross-check the proposed award against the "lodestar" fee.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Second, the proposed incentive award is cause for concern.  As described above, this award would net the named plaintiff more than five thousand dollars if the settlement is approved. Such large incentive awards set the named plaintiff apart from the absent class members; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members.  *See Radcliffe*, 715 F.3d at 1165 ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its

1  fairness . . . ."). For that reason, although the Ninth Circuit has agreed that incentive awards

2  "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.*

3  at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their

4  share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the

5  class members whose interests they are appointed to guard." *Id.* (quoting *Staton v. Boeing Co.*,

6  327 F.3d 938, 975 (9th Cir. 2003). The Circuit has also regularly reversed excessive awards. *See*

7  *id.* at 1163–64 (citing *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (affirming district

8  court's decision to decline approval for incentive awards totaling $325,000), *Rodriguez v. W.*

9  *Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) and *Staton*, 327 F.3d at 977–78 (finding total incentive

10 award $890,000 to be split among 29 named class representatives excessive and unsupported by

11 record)).

12      Third, as noted above, the settlement agreement contains a 'clear sailing' provision, in

13 which Waveland agrees not to challenge a motion for attorneys' fees up to 33 percent or the

14 incentive award to plaintiff of $5,800. Settlement Agreement ¶ 58(e). "The very existence of a

15 clear sailing provision increases the likelihood that class counsel will have bargained away

16 something of value to the class." *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great*

17 *Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). In conjunction with the relatively

18 large percentage of the award that would go toward attorneys' fees, the clear sailing provision

19 merits a higher degree of scrutiny before final approval. Together, these provisions create an

20 inference of a collusive settlement. This is not a reason to deny preliminary approval, but the

21 court will require a more robust showing of fairness at the final-approval stage.

22      Finally, if more than $20,000 in settlement checks to "Claimants," defined as those in

23 either the California class or the FLSA collective, *see* Settlement Agreement ¶ 12, remain

24 uncashed 90 days after distribution, the funds will be allocated to a second distribution to

25 California class members who cashed their first check, *id*. ¶ 81. Uncashed checks to FLSA

26 collective members could thus be aggregated and redistributed to the California class under this

27 provision, undermining the agreed-upon distribution of the settlement. This provision could

28 ultimately give "preferential treatment to class representatives or segments of the class," which is

16

1    a sign of unfairness.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  The parties offer

2    no explanation for this distribution method and the court is aware of no authority approving of

3    such a method.  Again here, a more thorough explanation of the fairness of the provision, with

4    citations to authority to the extent it exists, will be necessary before the court can grant final

5    approval.

6              Despite these concerns, the court is mindful of the "strong judicial policy favor[ing]

7    settlement of class actions."  *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at

8    1276).  In light of that policy and the indicators of fairness described above, the court concludes

9    the settlement agreement is likely to be approved under Rule 23(e)(2) if the concerns expressed

10   above can be resolved at the final approval stage.  But the court can offer no assurance that the

11   proposed fee and incentive awards will be approved without the additional information called for

12   by this order.  *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478,

13   at *5–7 (E.D. Cal. Aug. 27, 2019) (granting preliminary approval but deferring decision on fees

14   and incentive awards).

15           **B.      The FLSA Collective**

16             The court concludes for similar reasons as reviewed above that the members of the

17   proposed FLSA collective action are similarly situated.  *See Campbell*, 903 F.3d at 1109.  The

18   pleadings here show more similarity than dissimilarity.  Plaintiff alleges Waveland had a policy

19   of failing to include compensation for meals and lodging in calculating FLSA collective

20   members' base rate of pay for overtime purposes, and of failing to pay minimum wages while

21   collective members were not on shift but confined to the oil platform.  SAC ¶¶ 25–26.  He avers

22   these policies are memorialized in handbooks and other documentary evidence relevant to all

23   workers for the company.  McClure Decl. ¶ 11.  The court finds these are the requisite

24   "substantial allegations" turning on a "reasonable basis" as required at this stage of the litigation.

25   *Campbell*, 903 F.3d at 1109 (citations omitted).  The FLSA collective action may proceed to give

26   putative collective members notice of their right to opt in to the settlement.

27             Although this court has looked favorably on declarations of similarly situated employees

28   in the past as supporting the plausibility of material similarities among FLSA collective members,

17

1  *see Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-00548, 2019 WL 280294, at *8 (E.D.

2  Cal. Jan. 22, 2019) (considering declarations of putative FLSA collective members), such

3  declarations are not strictly necessary.  Their absence here does not lead to the court to reject the

4  proposed FLSA collective.

5       Here, plaintiff amended the complaint to add FLSA claims, which supported lower

6  damages.  *See generally* SAC.  Plaintiff's counsel estimates once the *Parker Drilling* decision

7  issued, it reduced the total value of the case by 84.3 percent.  Ellison Decl. ¶ 39.  At the time of

8  settlement, the total estimated value, including nearly $3 million assigned to FLSA claims, was

9  between $3.3 and $3.5 million.  *Id.* ¶¶ 38–41.  Although the parties agree the FLSA is the

10  controlling law post-*Parker Drilling*, Waveland maintains it is in compliance with the law and

11  this settlement may not "be construed as, or . . . used as an admission, concession, or indication

12  by or against Defendant of any fault, wrongdoing or liability whatsoever."  Settlement Agreement

13  ¶ 56.  In other words, absent this settlement, "the FLSA claims would lose substantial if not all of

14  their value."  Mot at 23–24.

15       The court also finds at this preliminary stage that the settlement agreement is likely to

16  embody "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under

17  *Lynn's Food Stores*, 679 F.2d at 1355.  The factors described in the previous section addressing

18  the California claims support this preliminary conclusion, but final approval will depend on the

19  resolution of the same concerns raised above.

20       **C.    Private Attorneys General Act (PAGA)**

21       The court must also consider whether the proposed PAGA settlement is adequate to serve

22  the public interest.  When plaintiffs bring a PAGA action, they do so as the "proxy or agent of the

23  state's labor law enforcement agencies, . . . who are real parties in interest."  *Sakkab v. Luxottica*

24  *Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015).  Any PAGA judgment binds not only

25  members of the class, but similarly situated workers who opt out of the class and the state's labor

26  law enforcement agencies.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014).  "[W]here

27  plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow

28  aggrieved workers who are effectively bound by any judgment."  *O'Connor v. Uber*

1   *Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp.*

2   *Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

3          A court analyzing the compromise of a PAGA claim must therefore consider whether the

4   settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies

5   underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted); *Haralson v. U.S.*

6   *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 979 (N.D. Cal. 2019). The court may employ a

7   sliding scale between the Rule 23 class settlement and the PAGA settlement; where "the

8   settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled."

9   *O'Connor*, 201 F. Supp. 3d at 1134. "By providing fair compensation to the class members as

10   employees and substantial monetary relief, a settlement not only vindicates the rights of the class

11   members as employees, but may have a deterrent effect upon the defendant employer and other

12   employers, an objective of PAGA." *Id*. However, where the compensation to the class is modest

13   compared to the verdict value, non-monetary relief is of limited benefit to the class, and the

14   settlement does not clarify the rights and obligations of the employees prospectively, meaning the

15   settlement of the non-PAGA claims may not vindicate the interests of PAGA. *Id*. at 1135. "In

16   these circumstances, the adequacy of settlement as a whole turns in large part on whether the

17   PAGA aspect of the settlement can stand on its own." *Id*.

18          PAGA penalties compromised for too small a percentage of their total value pose a

19   problem for the fairness of a settlement. In *O'Connor*, the plaintiffs and the LWDA agreed the

20   possible value of a PAGA penalty exceeded $1 billion, but the plaintiffs attempted to compromise

21   the claim for only $1 million. *Id*. at 1133. Even accounting for the possibility of reducing the

22   verdict as "unjust, arbitrary and oppressive, or confiscatory" as provided in California Labor

23   Code section 2699(e)(2), the court in that case found no analysis supported settling the PAGA

24   claim for 0.1 percent of its estimated value and so rejected it. *Id*. Courts can differ on this point,

25   and this court as well some other courts in this district have approved settlements compromising

26   PAGA penalties for single digit percentages of their maximum value, given the circumstances of

27   the particular cases involved. *See Dearaujo v. Regis Corp., et al.*, 14-1408-KJM-DB, 2017

28   WL 3116626, *3 (E.D. Cal. July, 21, 2017) (granting final approval of $1,950,00 gross settlement

1    with $10,000 PAGA payment); *Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*,

2    No. 2:16-1747, 2018 WL 746393 at *10 (E. D. Cal. Feb. 6, 2018) (approving 1% of gross

3    settlement as PAGA settlement);  *Rodriguez v. RCO Reforesting, Inc.*, No. 2:16-2523, 2019 WL

4    331159 (E. D. Cal. Jan. 24, 2019) (approving 6% of total settlement as PAGA penalties).

5           Here, plaintiff has not estimated the maximum value of his PAGA claims.  The proposed

6    $5,800 payment is only percent of the $290,000 gross settlement.  Settlement Agreement ¶ 42.

7    But because, as discussed above, the viability of the California-based claims has been undermined

8    by the decision in *Parker Drilling*, the court declines to deny the motion for this reason.  Final

9    approval, however, may not be granted without a more thorough explanation of why the heavy

10   discount is fair and reasonable.

11          Parties seeking approval of a PAGA settlement must also submit the proposed settlement

12   to the California Labor and Workforce Development Agency for comment at the same time they

13   submit their motion for preliminary approval of the settlement.  *Ramirez v. Benito Valley Farms,*

14   *LLC*, No. 16-04708, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Cal. Lab. Code

15   § 2699(l)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is

16   submitted to the court.").  The court will require evidence this has been done before final

17   approval.

18          **D.      Proposed Class Notice**

19          Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action,

20   the court must "direct notice in a reasonable manner to all class members who would be bound by

21   the proposal."  Where a class is certified under Rule 23(b)(3), the notice must meet the

22   requirements of Rule 23(c)(2)(B).  "Adequate notice is critical to court approval of a class

23   settlement under Rule 23(e)."  *Hanlon*, 150 F. 3d at 1025.

24          Notice must be the "best notice . . . practicable under the circumstances" and must provide

25   individual notice "to all members who can be identified through reasonable effort."  Fed. R. Civ.

26   P. 23(c)(2)(B).

27   /////

28   /////

The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC*, 361 F. 3d at 575.

The California class notice packet satisfies Rule 23. It explains in plain language the parties to the lawsuit, the claims at issue, and the terms of the settlement. *See* Cal. Class Not. at 41–42, Settlement Agreement Ex. 2, ECF No. 60-2. It provides instructions on how to object or opt out with deadlines. *Id*. It informs class members they will be bound by the release of claims if they do not opt out. *Id*. at 7–8. The notice packet indicates class members may enter an appearance through an attorney. In the section titled "THE COURT'S FINAL APPROVAL HEARING" it states, "You are not required to attend the Final Approval Hearing, but you or your lawyer may attend if you choose. If you are a Claimant and you wish to speak or have your lawyer speak for you, you may do so." *Id*. at 10. Waveland will provide the name and contact information of all class members to the settlement administrator, who will then mail notice packets directly to class members and attempt to obtain a forwarding address for any class member whose packet is returned as undeliverable. Settlement Agreement ¶¶ 67–68. The court approves the notice plan.

**E.     Proposed FLSA Notice**

The FLSA requires collective members to opt-in to the suit by filing a consent with the district court. 29 U.S.C. § 216(b). A district court may authorize the named plaintiff in a FLSA

21

1    collective action to send notice to all potential plaintiffs and set a deadline for plaintiffs to file

2    their consents with the court.  *See Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1064

3    (9th Cir. 2000); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)

4    (*Hoffman-La Roche II*).  In approving a form of notice for an FLSA action, "courts must be

5    scrupulous to respect judicial neutrality."  *Hoffman-La Roche II*, 493 U.S. at 174.  "To that end,

6    trial courts must take care to avoid even the appearance of judicial endorsement of the merits of

7    the action."  *Id*.

8         Here, the FLSA notice is sufficiently even-handed.  It sets forth all the claims asserted in

9    the suit, but notes Waveland's belief that it has complied with the applicable law.  FLSA Notice

10   at 57, Settlement Agreement Ex. 5, ECF No.60-2.  Finally, the notice disclaims any endorsement

11   of any position in the suit by the court:

12          The Court has made no ruling on the merits of the claims or defenses in the Lawsuit
13          and has determined only that certification of the California Class and FLSA Class
14          for settlement purposes is appropriate under the law.  However, the court has made
15          a preliminary determination that the settlement appears fair, adequate, and
16          reasonable.  The Court will decide whether to finally approve the Settlement after
17          the FLSA Class Members are given a chance to a chance to join, object to, or decline
18          to join the proposed settlement.

19   *Id*. at 58.

20         The proposed notice period during which FLSA collective members will be able to opt-in

21   to the suit is forty-five days, Settlement Agreement ¶ 39, which the court approves.

**IV.    CONCLUSION**

23         For the foregoing reasons, the court **grants preliminary approval of the California class**

24   **and conditionally certifies the proposed FLSA collective for settlement purposes only** but

25   cautions that the deficiencies identified above must be remedied before final approval is

26   appropriate.  Specifically, at the final approval hearing, the parties must be prepared to address:

27          1.     The reasonableness of the proposed attorney's fees, including in light of a lodestar

28                 analysis;

29          2.     The reasonableness of the incentive award;

30   /////

22

3.     Whether the unclaimed checks of the FLSA class will be consolidated and used in a second redistribution to the members of the California class that cash their checks and to what extent such a redistribution would undermine the reasonableness of the settlement; and

4.     Whether the PAGA requirements are satisfied.

The court preliminarily **approves** the California and FLSA class definitions, Settlement Agreement ¶¶ 3, 23, and the settlement of the collective claims under California law and the FLSA.

The court **approves** and appoints Phoenix Settlement Administrators as Settlement Administrator.

The court **approves** and appoints Strauss & Strauss, APC to represent the Settlement Class as Class Counsel.

The court **approves** and appoints plaintiff Marlin McClure as Class Representative.

The California class notice and FLSA notice are **approved.**

The court orders the following schedule, as set forth within the Settlement Agreement and proposed by plaintiff, Mot. at 41:

Waveland shall provide the contact information for California Class and Collective Members to Phoenix Settlement Administrators **within 14 days** from entry of this order.

Phoenix Settlement Administrators shall mail Notice Packets to California Class and Collective Members **within 20 days** from entry of this order.

California members **shall have 45 days** from the mailing of notice packets to opt-out.  Collective Members **shall have 45 days** from the mailing of notice packets to opt-in.

California Class and Collective Members shall submit objections, if any **within 45 days** of the mailing of notice packets.

Plaintiff's motion for final approval and attorney's fees and costs shall be filed **40 days** in advance of the final approval hearing.

1          The **Final Approval Hearing** is set for August 27, 2021.

2      This order resolves ECF No. 60.

3      IT IS SO ORDERED.

4  DATED:  May 26, 2021.

5                                          _____
                                           CHIEF UNITED STATES DISTRICT JUDGE