UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Marlin McClure, an individual, for himself and those similarly situated,

Plaintiff,

v.

Waveland Services, Inc., a Louisiana corporation doing business in California; and DOES 1 through 100, inclusive,

Defendants.

No. 2:18-cv-01726-KJM-AC

ORDER

Plaintiff Marlin McClure moves for final approval of settlement of this wage and hour collective and representative class action. The motion is unopposed. The court **grants the motion** as explained below.

I. **BACKGROUND**

The court reviewed in some detail the facts and procedural history of this case in its previous order, Prev. Order at 1–4 (May 27, 2021), ECF No. 67, and incorporates that discussion by reference here. From April 2016 until May 2018, plaintiff Marlin McClure worked for defendant Waveland on an oil and gas platform on the Outer Continental Shelf off the coast of California. McClure Decl. ¶¶ 2–5, ECF No. 64. In 2018, McClure filed this class action alleging wage and hour violations. Compl., ECF No. 1. McClure amended the complaint twice. *See* First

1

Am. Compl., ECF No. 19; Second Am. Compl. (SAC), ECF No. 59. In the operative second amended complaint, plaintiff alleges: 1) meal period violations; 2) rest period violations; 3) pay stub violations; 4) unfair competition; 5) failure to timely pay final wages; 6) civil penalties under the California Labor Code Private Attorneys General Act (PAGA); 7) violation of the Fair Labor Standards Act (FLSA); 8) minimum wage violations; and 9) overtime violations. *See generally* SAC.

The parties reached a settlement. Not. of Settlement, ECF No. 51. Plaintiff sought preliminary approval of the settlement, Mot. Prelim. Approval, ECF No. 60, which the court granted, *see generally* Prev. Order. The terms of the settlement create two classes: the California Class and the FLSA Collective. The California Class members "are all current and former hourly employees of Defendant, who worked for Defendant on oil platforms off the California coast for shifts of 12 hours or more since June 14, 2014." Mot. for Prelim. Approval at 5–6. The FLSA collective members "are all current and former hourly employees of Defendant, who worked for Defendant over 40 hours in a single workweek on an oil platform off any coast of the United States and, during such workweek, were furnished any meals and/or lodging in addition to other wages from June 14, 2015 through the date of preliminary approval." *Id.* at 6.

The settlement is non-reversionary, such that unclaimed funds will not be returned to defendant, and provides a Maximum Settlement Amount (MSA) $290,000. *Id.* at 1 (referring to amount as gross settlement amount); Not. of Mot. for Final Approval at 2, ECF No. 70. The MSA is inclusive of class counsel's fees of $95,700 or 33 percent of the MSA, class counsel's costs of $6,334, a service award for McClure of $5,800, and administration costs of $12,500. *Id.*; Mot. for Prelim. Approval at 1. The MSA also includes $5,800 in PAGA penalties, of which 75 percent or $4,350 is allocated to the California Labor and Workforce Development Agency (LWDA), with the remaining 25 percent or $1,450 allocated to the California Class Members who worked between June 12, 2017 and the date of preliminary approval. Mot. for Prelim. Approval at 1. From the net amount, which by the court's calculations appears to be approximately $163,866, 40 percent is allocated to the California Class and 60 percent to the

FLSA Collective.[1]  Mot. for Prelim. Approval at 1, 8.  Of the 549 identified class members, there are 548 individuals with qualifying FLSA claims and 78 individuals with qualifying California law claims.  Mot. for Final Approval at 1.  Any unclaimed FLSA funds will be redistributed to participating FLSA collective members.  *Id.*

Following preliminary approval, the settlement administrator implemented efforts to notify the California Class and FLSA Collective members.  Through information provided by defense counsel, the administrator compiled a mailing list of 549 Class Members.  *Id.*.  The administrator engaged in substantial efforts to effect notice, mailing notice packets, emailing Class Members, establishing a settlement website, and engaging in a telephone campaign.  *Id.* at 2.

As noted, McClure now moves for final approval of the settlement.  ECF No. 70.  The motion is unopposed.  Statement of Non-opposition, ECF No. 71.  The court held a hearing on October 8, 2021; Michael Strauss appeared on behalf of plaintiff and Douglas Farmer on behalf of defendant.

**II.    LEGAL STANDARD**

A class action may be settled only with the court's approval.  Fed. R. Civ. P. 23(e).  When, as here, a settlement agreement would bind absent class members, the court may approve it only after a hearing and only on finding that it is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

/////

---

[1] The net settlement originally was anticipated to be slightly lower, $162,700.  *See* Prev. Order at 4.

    (iii) the terms of any proposed award of attorney's fees, including timing of

     payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2).

  Before these provisions were incorporated into Rule 23(e)(2), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendments. Those factors remain relevant. Courts consider:

  (1) the strength of the plaintiff's case;

  (2) the risk, expense, complexity, and likely duration of further litigation;

  (3) the risk of maintaining class action status throughout the trial;

  (4) the amount offered in settlement;

  (5) the extent of discovery completed and the stage of the proceedings;

  (6) the experience and view of counsel;

  (7) the presence of a governmental participant; and

  (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (line breaks added for readability) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

  "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (citation omitted). In the absence of controlling law, this court continues to apply the Eleventh Circuit's standard in evaluating FLSA settlements, as it has done before. *Smothers v. NorthStar Alarm Services, LLC*, No. 17-548, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (citations omitted). The relevant question is whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Jefferson v. MEC Dev., LLC*, No. 17-1394, 2019 WL 5209149, at *3 (E.D. Cal. Oct. 16, 2019) (quoting *Lynn's Food Stores, Inc. v. United States by &*

*through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). "Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions." *Maciel v. Bar 20 Dairy, LLC*, No. 17-902, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018) (citation omitted). Here, there is a bon fide dispute over FLSA provisions. Prev. Order at 18; *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" (citation omitted)); *Greer v. Dick's Sporting Goods, Inc.*, No. 15-1063, 2019 WL 4034478, at *2 (E.D. Cal. Aug. 27, 2019).

The court turns to consider the Rule 23 factors.

### III. ANALYSIS

#### A. Final Approval

The Rule 23 factors favor final approval of the proposed settlement. This action encompassed more than three years of litigation, including a motion to amend, a motion for preliminary approval, discovery efforts and mediations. The class was represented by experienced counsel and the court finds no reason to reconsider its previous finding that class counsels' representation was adequate. *See* Prev. Order at 10.

The court also remains persuaded that representation of the Class by McClure was adequate. *See* Prev. Order at 10. Nonetheless, the court considers whether the incentive award is adequate, considering several prescribed factors when deciding whether to award an incentive fee to a named plaintiff: (1) "the risk to the class representative in commencing suit, both financial and otherwise;" (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative;" (4) "the duration of the litigation;" and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smothers*, 2020 WL 1532058, at *11 (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, McClure initiated and continued this litigation related to his work, knowing he faced risks as the case raised "an issue of first impression" at the time it was filed, McClure Decl. ¶ 14, and he could suffer "industry-wide retaliation," Mot. for Final Approval at 18. McClure has participated at every step of the case for three years. McClure Decl. ¶ 19. At the time of preliminary approval, he estimated he had spent 40 hours reviewing pleadings and data, finding witnesses and evidence, and discussing settlement efforts. *Id.* ¶ 20. Unlike the rest of the class, he has "enter[ed into] a full and complete release of all known and unknown claims." *Id.* ¶ 23. On balance, the relevant factors weigh in favor of approving the $5,800 requested service award. *Cf. In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (awarding $5,000 payment to each named plaintiff).

The court also continues to find the agreement was negotiated at arms' length, Prev. Order at 13 (citing Fed. R. Civ. P. 23(e)(2)), and achieves an adequate amount of relief for the class despite the reduced value of some of the claims given recent court decisions and the risks associated with trying to move forward to trial, *see id.* at 14. Prior to preliminary approval, the Supreme Court found that the "California minimum wage does not apply" in employment matters involving the Outer Continental Shelf (OCS), such as the case here. *Parker Drilling Mgmt. Servs. v. Newton*, ___ U.S. ___, 139 S. Ct. 1881, 1893 (2019). Also since the court granted preliminary approval and following the decision in *Parker Drilling*, the Ninth Circuit decided "California law does not provide the rule of decision for meal-and rest-time claims arising on the OCS." *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1075 (9th Cir. 2021). Taking into account these recent changes, the value of the settlement is reasonable given the barriers the controlling law places in the class's path to a greater recovery. *See Curtis v. Irwin Indus., Inc.*, No. 15-2480, 2020 WL 9457057, at *6–7 (C.D. Cal. Dec. 2, 2020) (finding gross settlement amount of $400,000 to be "positive outcome" and a "justified" reduction from the plaintiffs' initial $14 million valuation of their claims because *Parker Drilling* made any recovery "highly uncertain"); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he Settlement amount . . . was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.").

6

1       The agreement also treats each member equitably with respect to other members of the
2 class or collective.  The net settlement amount will be distributed among members of the
3 California Class and FLSA Collective, with the amount each member receives determined by the
4 number of weeks each worked for defendant.  *See* Prev. Order at 4.  "Based upon the calculations
5 stipulated in the Settlement," the FLSA Collective's highest individual payment will be
6 approximately $2,305.02, the lowest payment will be approximately $10.62, and the average
7 payment will be approximately $1,176.14.  Suppl. Kruckenberg Decl. ¶ 6, ECF No. 72.  The
8 California Class's highest payment will be approximately $1,441.81, the lowest will be
9 approximately $67.60, and the average payment will be approximately $852.95. Kruckenberg
10 Decl. ¶ 16, ECF No. 70-12.

11       The initial finding that the settlement is fair and reasonable is also supported now by class
12 member responses.  The FLSA Collective opt-in rates are relatively low, near 13 percent at the
13 time McClure filed the motion for final approval; however, as in other cases, "the [c]ourt does not
14 find the relatively low response rate of potential class members weighs against approval."
15 *Touhey v. United States*, No. 08-1418, 2011 WL 3179036, at *8 (C.D. Cal. July 25, 2011).  The
16 court's conclusion in this respect takes account of the overall favorable recovery rate and the fact
17 that no member of the California Class or FLSA Collective opted-out or objected to the
18 Settlement.  Kruckenberg Decl. ¶¶ 11–12, 14; *see Touhey*, 2011 WL 3179036, at *8.

19       Accordingly, the court finds the settlement is fair and reasonable with respect to the Rule
20 23 factors for the California Class and the FLSA Collective.

21       **B.**      **Attorneys' Fees**

22       The plaintiff requests attorneys' fees of $95,700, and reimbursement of $6,334 in costs.
23 Mot. for Final Approval at 8, 17.  "The court may award reasonable attorney's fees . . . that are
24 authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The court must ensure the
25 agreed-upon award is reasonable.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941
26 (9th Cir. 2011).  The Ninth Circuit has set the benchmark for attorney's fees at 25 percent of the
27 gross settlement amount, *see In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018),
28 though "courts may adjust this figure upwards or downwards if the record shows special

7

circumstances justifying a departure," *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942).  The court may conduct a lodestar cross-check in evaluating the reasonableness of a percentage recovery of a common fund.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  Here, the proposed award for attorneys' fees equals 33 percent of the MSA.  Mot. for Final Approval at 8.  California courts have found attorneys' fees awards upwards of 33 percent to be reasonable in wage and hour class actions, and federal courts including this one have taken account of the higher percentage in determining reasonable fee awards.  *See, e.g., Greer*, 2019 WL 4034478, at *7 ("California courts more often deem awards of up to 33 percent reasonable and less often expressly refer to a 25 percent benchmark.").  Nonetheless, the court conducts a lodestar cross-check to evaluate the award request.

A lodestar cross-check supports the fees here.  In conducting such a cross-check, a court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted).  "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Wilson v. Metals USA, Inc.*, No. 12-568, 2021 WL 516585, at *6 (E.D. Cal. Feb. 11, 2021) (quoting *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted)).  "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

Here, Class Counsel spent a total of 331 hours litigating this case with Michael A. Strauss, Aris E. Karakalos and Andrew C. Ellison performing 29.2, 143.2 and 158.6 hours of work respectively.  Strauss Decl. ¶ 41, ECF No. 70-1; *id.* Ex. 4 (billable hours invoice for all work completed in this case).  Having closely reviewed the billable hours, the court finds the number of hours was reasonable in this case.  *See* Strauss Decl. ¶ 31 (noting counsel "reduced the time for some entries that were excessive, duplicative in [his] exercise of billing judgment.").  Both Strauss and Karakalos seek an hourly rate of $650, while Andrew Ellison seeks a rate of $400.

*Id.* ¶ 41. Strauss has 13 years' experience, Strauss Decl. ¶ 44, Karakalos has 16 years' experience, Karakalos Decl. ¶ 4, ECF No. 70-10, and Ellison has 8 years' experience, Ellison Decl. ¶ 51, ECF No. 70-7. In the context of their overall billing, the attorneys' rates based on their respective years of experience align favorably with the rates generally deemed acceptable by courts in the Eastern District of California. *Z.F. v. Ripon Unified Sch. Dist.*, No. 10-523, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("[p]revailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation." (citation omitted)); *see Smothers v. NorthStar Alarm Services LLC*, No. 17-548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (applying $695 per hour in lodestar calculation for attorney with 30 years' experience). Multiplying counsel's hours by their hourly rates yields a lodestar amount of $133,780.[2] Strauss Decl. ¶ 41. When compared to the $95,700 fee counsel requests, the lodestar multiplier is 0.7 to reflect the lesser amount of fees requested. This multiplier, which does not benefit counsel, is reasonable. *Cf. Vizcaino*, 290 F.3d at 1050–51, 1051 n.6 (noting multiples as high as four "are frequently awarded in common fund cases when the lodestar method is applied" (marks and citation omitted)).

    **C.**    **Litigation and Administrative Costs**

Class counsel seeks $6,334 in litigation costs, Mot. for Final Approval at 17, and $12,500 in settlement administration costs, Not. of Mot. for Final Approval at 2. The court must determine whether the proposed award of costs and expenses is appropriate. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 13-234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks, citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (internal marks and citation omitted). Counsel seeks reimbursement for

---

[2] There are some discrepancies in the record regarding the proper sum. *See* Final Mot at 15, Strauss Decl. ¶ 41. The court clarified the proper amount at hearing and notes regardless of the proper sum, counsel's fees are significantly lower than the fees incurred on a straight billable basis.

"attorney service fees, court reporter fees, filing fees, postage and delivery fees, and other fees related to the litigation." Mot. for Final Approval at 17 (citing Strauss Decl. ¶ 46). Courts frequently approve reimbursement for such costs. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) ("[C]osts incurred, which include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges. . . are routinely reimbursed." (citation omitted)).

In sum, the court finds the request for reimbursement of litigation to be reasonable. The administrative costs also are reasonable. *See* Kruckenberg Decl. Ex. B (itemized receipt detailing costs for printing and distributing notice, tax reporting, and handling of uncashed checks).

### D.  PAGA

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Any PAGA judgment binds not only members of the class, but similarly situated workers who opt out of the class and the state's labor law enforcement agencies. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014). A court analyzing the compromise of a PAGA claim must consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). (citation omitted). However, neither the PAGA nor the California state court has established any specific standard for evaluating PAGA settlements. *See Ramirez v. Benito Valley Farms, LLC*, No. 16-4708, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017). The court, as it has done in the past, refers to the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), to evaluate the PAGA settlement, *see Pena v. Taylor Farms Pac.*, Inc., No. 13-1282, 2021 WL 916257, at *7–8 (E.D. Cal. Mar. 10, 2021).

The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.

At hearing the parties addressed the reasonableness of the PAGA penalties. Class counsel clarified the PAGA claim was derivative of the other California law claims, none of which would succeed if the case were to continue. *See Parker Drilling*, 139 S. Ct. at 1893; *Mauia*, 5 F.4th at 1075. Given the substantial risk that no California wage law applies in this case, class counsel estimates the maximum PAGA penalties are zero for each underlying violation. The settlement proposes a $5,800 PAGA penalty, representing 1 percent of the overall MSA, Prev. Order at 20, which is within the range previously approved by courts in this district. *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 17-853, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving PAGA penalty equal to approximately 2 percent of gross settlement). Given the likelihood that no PAGA penalties would be recoverable were the case to move forward, the court finds the sum provided for here is reasonable. Class counsel properly notified LWDA, Mot. for Final Approval at 19, and the agency has not opposed the settlement.

The PAGA settlement is approved.

## IV. CONCLUSION

The court **grants the motion for final approval of the class settlement**. The court retains continuing jurisdiction over: (a) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon, as needed; (b) disposition of the Settlement Fund, as needed; and (c) all parties hereto for the purpose of construing, enforcing, and administrating the Settlement.

The parties shall notify the court within **seven (7) days after the settlement becomes fully funded**. At that point, the court will enter its Final Judgment and Order of Dismissal with Prejudice. This order resolves ECF No. 69.

IT IS SO ORDERED.

DATED: November 9, 2021.

CHIEF UNITED STATES DISTRICT JUDGE